UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JULIO BAEZ GONZALEZ,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 17-cr-10142-DJC-3<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                   **April 15, 2022**

**I.     Introduction**

Petitioner Julio Baez Gonzalez ("Gonzalez" or "Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("Petition"), alleging that his guilty plea to violating 18 U.S.C. § 922(g)(5)(A) was invalid because the government failed to allege and prove the requisite intent in light of the Supreme Court's decision in Rehaif v. United States, __ U.S. __, 139 S. Ct. 2191, 2194 (2019).  D. 475, 478.  The government opposes the Petition.  D. 477.  For the reasons discussed below, the Court DENIES the Petition.

**II.    Standard of Review**

An incarcerated person may seek post-conviction relief under § 2255 if his sentence (1) was imposed in violation of the Constitution, (2) was imposed by a court that lacked jurisdiction, (3) exceeded the statutory maximum or (4) was otherwise subject to collateral attack.  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  It is Petitioner's burden to make out a claim for such relief by a preponderance of the evidence.  Id.; United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

1

### III. Factual and Procedural Background

Gonzalez pled guilty to conspiring to distribute heroin, cocaine and fentanyl in violation of 21 U.S.C. § 846 (Count One); unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A) (Count Six); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Seven). D. 286. On February 21, 2019, the Court sentenced Gonzalez to 156 months imprisonment and three years of supervised release. D. 445. The Supreme Court decided Rehaif on June 21, 2019. See Rehaif, 139 S. Ct. at 2191. Gonzalez filed the Petition on December 9, 2019, D. 475, and later filed an amended Petition, D. 478.

### IV. Grounds for Relief

Gonzalez contends that his guilty plea to Count Six was invalid in light of Rehaif, 139 S. Ct. at 2191. D. 478 at 5. In Rehaif, the defendant entered the United States on a nonimmigrant student visa to attend university. Rehaif, 139 S. Ct. at 2194. After the defendant received poor grades, the university dismissed him and informed him that his "immigration status" would be terminated unless he transferred to a different university or left the country. Id. The defendant did neither and subsequently visited a firing range where he shot two firearms. Id. The government prosecuted the defendant for possessing firearms as an alien unlawfully in the United States in violation of § 922(g) and § 924(a)(2). Id. Section 922(g) makes it unlawful for "an alien" who "is illegally or unlawfully in the United States" to ship, transport, possess or receive any firearm or ammunition in interstate commerce. 18 U.S.C. § 922(g)(5)(A). Section 924(a)(2) provides that any person who "knowingly violates" § 922(g) shall be subject to criminal penalties. Id. § 924(a)(2). At Rehaif's trial, the judge instructed the jury that the government was not required to prove that the defendant knew he was unlawfully in the United States. Rehaif, 139 S. Ct. at 2194. On review, the Supreme Court reversed the conviction, holding that the statute required the

2

government to prove the defendant knew both that he possessed a firearm (the "possession element") and his status as an alien illegally or unlawfully in the country (the "status element"). Id. at 2195–96.

Here, Gonzalez claims that he neither admitted nor knew he was "among the class of persons prohibited from possession of a firearm." D. 478 at 5. Further, he asserts that his counsel did not advise him of the knowledge requirement for the "status element" and that the indictment failed to allege he had such requisite knowledge. Id. Accordingly, Gonzalez contends that his "plea [to violating § 922(g)(5)(A)] was not knowingly and voluntarily entered" so the Court lacked authority to accept the plea and impose a sentence. Id.

**V.      Discussion**

    **A.      Retroactive Applicability of *Rehaif***

The government argues that "it is not clear" that Rehaif would apply retroactively to Gonzalez's challenge. D. 477 at 5–6. This Court, however, need not decide whether Rehaif applies retroactively here because, as the government also argues, D. 477 at 6, and the Court concludes below, Gonzalez's claim fails on the merits. See Martinez-Armestica v. United States, 468 F. Supp. 3d 470, 478 (D.P.R. 2020) (concluding that "the court need not decide now whether Rehaif applies retroactively in the present context because [petitioner's] argument . . . lacks merit"); United States v. Riley, 411 F. Supp. 3d 182, 184 (D. Mass. 2019) (same).

    **B.      Actual Prejudice**

Even assuming Rehaif applies retroactively to initial petitions for collateral review brought under § 2255, Gonzalez cannot show actual prejudice. Courts apply the "actual prejudice" harmless error test to habeas cases on collateral review. Sustache-Rivera v. United States, 221 F.3d 8, 18 (1st Cir. 2000) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). "This standard

3

requires [courts] to ask whether the error had a substantial and injurious effect or influence on the outcome of the proceedings." Ellis v. United States, 313 F.3d 636, 644 (1st Cir. 2002). Where, as here, the defendant challenges his conviction resulting from a guilty plea, the defendant must "show that there is a reasonable probability that he would not have pled guilty" if the claimed Rule 11 error had not occurred. See United States v. Urbina-Robles, 817 F.3d 838, 843–44 (1st Cir. 2016).

Gonzalez cannot meet this standard, given the circumstantial evidence suggesting that he knew his status as an alien unlawfully in the United States and the lack of effect Count Six had on his sentence.

   1.   *Circumstantial Evidence of Knowledge of Status*

Gonzalez fails to "show that he would not have pled guilty had he known that the Government needed to prove knowledge of his status . . . or that a jury would have found that he lacked such knowledge." See Riley, 411 F. Supp. 3d at 184. Rehaif does not "obligate[] the government to prove [the defendant's] 'subjective knowledge that he [was] violating the law'" but rather "imposes a scienter of status requirement . . . requir[ing] the government to prove" that the defendant knew his status as among a category of persons barred from possessing a firearm. See United States v. Austin, 991 F.3d 51, 59 (1st Cir. 2021) (emphasis omitted). Thus, here, the government only would have had to prove at trial that Gonzalez knew he was unlawfully in the country.

Circumstantial evidence suggests that Gonzalez knew he was illegally or unlawfully in the United States. For example, the Presentence Report ("PSR") reveals that Gonzalez entered the United States "via Mexico" on January 8, 2015, "was subsequently arrested by law enforcement officials in Texas," was released on February 19, 2015 and "immediately relocated" to

4

Massachusetts. PSR ¶ 140. According to U.S. Immigration and Customs Enforcement records, Gonzalez was released on bond with his removal hearing "pending." Id. ¶ 124. The offense conduct later occurred in early 2017. See id. ¶ 37.

Further, Gonzalez does not provide any plausible argument that he did not know he was unlawfully in the country. See generally D. 478; D. 499; see Martinez-Armestica, 468 F. Supp. 3d at 481 (noting that the petitioner "tender[ed] no claim that he would have testified that he did not know" his status "[o]ther than bald proclamations of innocence for lacking the [requisite scienter]" (citation and internal quotation marks omitted)). Accordingly, Gonzalez cannot "show that there is a reasonable probability that he would not have pled guilty" to the § 922(g) charge had he known that the government needed to prove knowledge of his status. See Urbina-Robles, 817 F.3d at 843–44.

2. *Lack of Effect on Sentence*

Gonzalez also suffered no actual prejudice because the § 922(g) charge (Count Six) did not affect his sentence, as his sentencing guidelines calculation would have been the same even had the charge been dismissed. The PSR grouped Counts One and Six for guidelines calculation purposes under U.S.S.G. § 3D1.2 (providing for the grouping of closely related counts). PSR ¶ 92. Under the sentencing guidelines, the offense level for the most serious of the counts comprising the group provides the determinative calculation. U.S.S.G. § 3D1.3(a). As between Counts One and Six, Count One yielded the highest offense level. PSR ¶ 94. Accordingly, Gonzalez's base offense level for the group was calculated as 32. Id. ¶¶ 95–102; see U.S.S.G. § 2D1.1(c)(4) (providing base offense level based upon drug quantity). This offense level was reduced by three for Gonzalez's acceptance of responsibility, resulting in a total offense level of 29. PSR ¶¶ 114–15. Given Gonzalez's criminal history, such resulted in a sentencing range of 87 to 108 months.

D. 405 at 6. Further, the § 924(c) charge (Count Seven) statutorily required a consecutive five-year minimum term. PSR ¶ 93; 18 U.S.C. § 924(c)(1)(A); U.S.S.G. § 2K2.4. Such increased the calculation by sixty months, resulting in a total range of 147 to 168 months. D. 405 at 6; PSR ¶ 160. At Gonzalez's sentencing, the government recommended the midpoint of this range, 156 months, D. 406 at 8, and the Court accepted this recommendation, see D. 445.

Because Count One alone determined the base offense level for the group comprising Counts One and Six, Gonzalez's sentencing guidelines calculation would have remained the same even if Count Six had been dismissed. Accordingly, Gonzalez cannot "show that there is a reasonable probability that he would not have pled guilty" to the § 922(g) charge based on the charge's effect on his sentence. See Urbina-Robles, 817 F.3d at 843–44.

For all these reasons, any error did not have a "substantial and injurious effect or influence on the outcome of the proceedings." Ellis, 313 F.3d at 644. Accordingly, Gonzalez cannot show actual prejudice.

### C. Waiver

The government also argues that Gonzalez waived his right to challenge his conviction collaterally. D. 477 at 7. A defendant's waiver of collateral attacks is enforceable if three conditions are met: (1) "the written waiver must comprise 'a clear statement' describing the waiver and specifying its scope"; (2) "the record must show that the judge's interrogation 'suffice[d] to ensure that the defendant freely and intelligently agreed to waive [his or] her right to appeal'"; and (3) even if the first two are satisfied, the denial of a right to appeal will not "work a miscarriage of justice." United States v. Morillo, 910 F.3d 1, 2 (1st Cir. 2018) (alterations in original) (quoting United States v. Teeter, 257 F.3d 14, 24–25 (1st Cir. 2001)); see Fed. R. Crim. P. 11(b)(1)(N).

In response, Gonzalez cites the following sentence from his plea agreement: "Defendant also understands that, in some circumstances, Defendant may be able to challenge his conviction in a future proceeding (collateral or otherwise) . . . ." D. 499 at 2; see D. 285 at 5. This sentence, however, comes under the header "Waiver of Right to Appeal and to Bring Future Challenge" and is immediately followed by the sentence: "Defendant waives any right to challenge Defendant's conviction on direct appeal or in any future proceeding (collateral or otherwise)." See D. 285 at 5. Thus, the cited sentence, in context, refers to the right that Gonzalez ordinarily would have enjoyed had he not waived that right by entering into the plea agreement; the following sentence indicates his waiver of that right. Moreover, at Gonzalez's change of plea hearing, the Court asked Gonzalez whether he "underst[ood] that under the terms of the plea agreement [he has] given up or waived certain of [his] appellate rights." D. 404 at 15. Gonzalez responded, "I understand." Id. The Court further asked whether Gonzalez "discuss[ed] that waiver with [his] counsel." Id. Gonzalez responded, "Yes, we did talk about that." Id. Accordingly, the conditions for an enforceable waiver of appellate rights are satisfied here. See Portway v. United States, 105 F. Supp. 3d 127, 128–29 (D. Mass. 2015) (explaining that the defendant voluntarily waived his right collaterally to attack the sentence because the signed plea agreement "elucidate[d]" the waiver and scope, and the defendant indicated to the Court that he understood that he was agreeing not to challenge the sentence). Even assuming that Gonzalez did not waive his appellate rights, however, he has failed to show actual prejudice, as discussed above, so his claim fails on the merits.

VI. **Conclusion and Certificate of Appealability**

For the foregoing reasons, the Court DENIES the Petition as amended, D. 478.

A petitioner may receive a certificate of appealability only if he has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537

7

U.S. 322, 336 (2003).  Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Based upon its analysis of the record and the applicable law, this Court does not, at this time, conclude that "reasonable jurists" could debate this Court's conclusion.  Id. Accordingly, the Court is not inclined to issue a certificate of appealability but will give Petitioner until May 16, 2022 to file a memorandum to address the issue of whether a certificate of appealability is warranted as to the Petition.

    **So Ordered.**

                                                   /s/ Denise J. Casper
                                                 United States District Judge